CEAWLEY, Judge.
Shirley A. Jones and Larry D. Cross (hereinafter referred to as “the redemp-tioners”) defaulted on payments for their home. Pursuant to the terms of a mortgage [1] between the redemptioners and Clyde W. Clausell, John Clausell, Theodore Clausell, and Samuel Rowe (hereinafter collectively referred to as “the sellers”), a foreclosure sale was conducted on August 16, 1999, as a result of the redemp-tioners’ default. The home was repurchased by the sellers, except that John Clausell had died and his two daughters, Annie Bettis and Elnora Shackelford, repurchased his interest in the property (the sellers, excluding John Clausell and including Bettis and Shackelford, are hereinafter collectively referred to as “the purchasers”). On August 18, 1999, the redemp-tioners received a letter giving them notice that their home had been sold at the foreclosure sale. The notice informed them that they had 10 days to surrender possession of their home pursuant to § 6-5-251, Ala.Code 1975, and that their failure to do so would cause them to forfeit their right to redemption.
On August 7, 2000, the redemptioners inquired of the purchasers concerning the total amount due to be paid so that they could exercise their right of redemption. On August 15, 2000, the redemptioners were informed that because they had not delivered possession of their home until August 30, 1999, 12 days after receiving notice of the foreclosure sale, they had therefore forfeited their right to redemption.
On August 16, 2000, the redemptioners filed a complaint for redemption against the purchasers, alleging that they had surrendered possession of their home in a timely manner pursuant to § 6-5-251, that they had provided the purchasers with a written demand for a statement of debt and charges and that the purchasers had failed to provide a statement to them within 10 days pursuant to § 6-5-252.[2] On November 13, 2000, the purchasers filed an answer to the redemptioners’ complaint. On May 25, 2001, the redemption-ers filed suggestions of death for Shackel-ford and Theodore Clausell and a motion to amend their complaint to name Namon Shackelford, Jr., Angela Tartt, Lakeisha Grimes, Elnora Reid, and Namon Shackel-ford, the heirs of Elnora Shackelford, and Ima Paxton, Erme Jean Clausell, Johnnie Clausell, Theodore Clausell, Jr., and Dais-ey Clausell, the heirs of Theodore Clausell, as defendants (these heirs are hereinafter included in the term “the purchasers”). On June 4, 2001, the trial court granted the redemptioners’ motion to amend their complaint; an amended complaint was filed on June 9, 2001.
On January 22, 2002, the trial court conducted a bench trial on the redemption-ers’ complaint. On February 1, 2002, the trial court entered an order stating that *1136 the redemptioners were not entitled to the relief they sought. The redemptioners filed a notice of appeal on March 24, 2002. On August 23, 2002, this case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala.Code 1975. On appeal, the redemptioners argue that the trial court erred in determining that they had not properly exercised their right to redeem their home.
The trial court was presented with conflicting testimony in regard to when the redemptioners surrendered possession of their home to the purchasers. The redemptioners testified that the last night they stayed at the home was Thursday, August 26, 1999; that they had completely moved out of the home and contacted Namon and Elnora Shackelford on Friday, August 27; and that they surrendered possession of their home by providing the keys to the house to Namon and Elnora on Saturday, August 28, 1999. Namon testified that the redemptioners telephoned on Saturday, August 28, and stated that they were still moving things out of the home and wanted to clean it, and scheduled to meet him and Elnora to deliver the keys on Monday, August 30, 1999. The trial court questioned Namon as to the reliability of his memory of that date; Namon responded that he was sure of the date because he had picked Elnora up from work prior to meeting the redemptioners at the home.
Our review of the trial court’s judgment is governed by the ore tenus standard of review.
“ ‘We note that under the ore tenus standard of review, the trial court’s findings of fact based on oral testimony, and a judgment based on those findings, are given a presumption of correctness. A judgment based on such findings will not be reversed unless it is shown to be plainly and palpably wrong. The appellate courts are not allowed to substitute their own judgment for that of the trial court if the trial court’s decision is supported by reasonable inferences to be drawn from the evidence. The reason for giving such deference to the trial judge’s findings based on disputed evidence in ore tenus proceedings is that the trial judge has the benefit of observing the witnesses’ manner and demeanor and has the better opportunity to pass upon the credibility of their testimony.’
“Ex parte Pielach, 681 So.2d 154, 154-55 (Ala.1996) (citations omitted). ‘Under the ore tenus rule, the trial court’s judgment and all implicit findings necessary to support it carry a presumption, of correctness and will not be reversed unless found to be plainly and palpably wrong.’ Transamerica Commercial Fin. Corp. v. AmSouth Bank, N.A., 608 So.2d 375, 378 (Ala.1992) (citations and internal quotation marks omitted).”
Creel v. Crim, 812 So.2d 1259, 1260-61 (Ala.Civ.App.2001). Based upon this standard of review, we cannot say that the trial court erred in basing its decision on the testimony of Namon Shackelford rather than on the testimony provided by the redemptioners. The trial judge was in the best position to determine the credibility of the testimony presented.
The redemptioners also attempt to rely on Watts v. Rudulph Real Estate, Inc., 675 So.2d 411 (Ala.1996), to argue that Namon and Elnora had not acted with due diligence in failing to demand the keys to the home when the redemptioners telephoned them on August 28 and that the redemptioners had otherwise acted in good faith. In Watts, our supreme court held that redemptioners’ acting in good faith and a purchaser’s not acting with due diligence excused the redemptioners’ precise *1137 compliance with § 6-5-251. In that case, the redemptioners, on the ninth day, sought a statement of charges by the purchaser to exercise their right of redemption. On the tenth day, having received no response from the purchaser, the redemp-tioners sent a second letter stating an intent to redeem along with a check, estimated to be the amount of charges due. On the seventeenth day, the purchaser returned the check with a letter stating that the charges were $136.48 more than the amount sent by the redemptioners and stating that because the redemptioners had failed to surrender possession, their right to redemption had been forfeited. In making its holding, the supreme court observed:
“This court stated in Garvich v. Associates Financial Services Co., 435 So.2d 30, 33 (Ala.1983):
“ ‘ “Courts of equity, in keeping with the general policy of redemption statutes, namely, the prevention of the sacrifice of real estate by forced sales, have excused the literal compliance with these statutes, and entertained bills for statutory redemption in a variety of cases, wherein, because of some fault of the party from whom redemption is sought, compliance would be useless, or, for any reason, not the fault of the redemptioner, it becomes impractical to comply.” ’
“Quoting Rodgers v. Stahmer, 235 Ala. 332, 333, 179 So. 229, 230 (1938).”
675 So.2d at 413.
The implicit findings that support the trial court’s judgment (i.e., that the re-demptioners presented no evidence to suggest why they could not have surrendered possession of the home, if the trial court believed the testimony of Namon that the redemptioners telephoned on Saturday, August 28, stating they had not completed moving or cleaning the house) carry a presumption of correctness and we cannot conclude those findings to be plainly or palpably wrong. Creel, supra. The testimony presented by Namon does not present a case in which the redemptioners made a good-faith effort, nor can we say that the failure to demand the keys on the tenth day was a lack of due diligence as was presented in Watts, supra, because Namon and Elnora had no duty to demand that the redemptioners surrender possession of the home on the tenth day. Rather, the redemptioners had a duty to surrender possession by the tenth day to avoid forfeiting their right to redemption. Accordingly, the trial court’s judgment is due to be affirmed.
AFFIRMED.
YATES, P.J., and THOMPSON and PITTMAN, JJ., concur.
MURDOCK, J., concurs specially.

. The mortgage was titled as a vendor's lien deed and promissory note, but was in substance a simple mortgage.

. We note that the 10-day period within which the purchasers were allowed to provide a statement to the redemptioners had not expired as of the date the complaint was filed.